IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CAROL J. BARNETT,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 13-cv-781-CJP[1] |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **Acting Commissioner of Social** | ) |
| **Security,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Carol J. Barnett, represented by counsel, seeks judicial review of the final agency decision denying her Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Ms. Barnett applied for benefits in January, 2010, alleging disability beginning on August 18, 2008. (Tr. 23). After holding an evidentiary hearing, ALJ Michael Scurry denied the application for benefits in a decision dated February 16, 2012. (Tr. 23-32). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 6-12). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 15.

**Issues Raised by Plaintiff**

Plaintiff raises the following points:

1. The ALJ erred in determining that plaintiff could return to her past work as it is generally performed.

2. The ALJ erred in evaluating plaintiff's credibility and in assessing her RFC.

3. The Appeals Council erred in denying review after plaintiff submitted new and material evidence.

**Applicable Legal Standards**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals

has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at

step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled.... If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Ms. Barnett was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of

the ALJ.  *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997).  However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.  See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### The Decision of the ALJ

ALJ Scurry followed the five-step analytical framework described above.  He determined that Ms. Barnett had not been engaged in substantial gainful activity since the alleged onset date, and that she was insured for DIB through June 30, 2014.  He found that plaintiff had severe impairments of cervical and thoracic degenerative disc disease, degenerative changes at L4-5, obesity and history of left shoulder rotator cuff repair.  He further determined that these impairments do not meet or equal a listed impairment.

The ALJ found that Ms. Barnett had the residual functional capacity (RFC) to perform the full range of work at the sedentary exertional level. Based on the testimony of a vocational expert, the ALJ found that plaintiff was able to do her past work as a postmaster as that job is generally performed.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order.  The following summary of the record is directed to the points raised by plaintiff and is confined to the relevant time period.

1. **Agency Forms**

Ms. Barnett was born in 1959. She was almost 49 years old on the alleged onset date. (Tr. 140). She completed two years of college. (Tr. 155).

Plaintiff stated in a Work History Report that she had worked as a postmaster from 1985 through 2010. In that job, she sorted the mail, including large packages. She was required to lift up to 70 pounds. She was also required to clean the post office, including mopping the floor once a week. (Tr. 143-145, 156-157).

Plaintiff filed a Disability Report in January, 2010, in which she said her ability to work was limited by back pain, a shoulder injury, diabetes, high blood pressure, neuropathy in her left arm and a fatty liver. She was 5'6" and weighed 180 pounds. (Tr. 154). In June, 2010, she reported that her middle back pain was getting worse and her left shoulder hurt when she lifted too much. She was "constantly changing positions due to pain." She had to prop her legs up to relieve swelling in her feet and ankles. (Tr. 167).

3. **Evidentiary Hearing**

Ms. Barnett was represented by an attorney at the evidentiary hearing on January 20, 2012. (Tr. 40).

Plaintiff was 52 years old at the time of the hearing. She lived with her husband and three adult children. (Tr. 43-44).

Plaintiff testified that she last worked as a postmaster in Wolf Lake, Illinois,

from 2003 to August, 2008. In that job, she opened up every morning, unloaded the mail truck and sorted the mail. She had to wait on customers, pick up packages, mop floors, wash windows and empty the trash. She did some computer work, such as timekeeping. Before that job, she worked as a mail clerk in the post office in Du Quoin, Illinois, from 1991 to 2003. Her main job was to work the window. She also sorted mail and handled packages. She had to do things at Wolf Lake that she did not have to do at Du Quoin because there were other people working with her at Du Quoin, including a janitor, four or five other clerks, mail carriers, and a postmaster. (Tr. 48-50). The population of Wolf Lake was 300. Ms. Barnett testified that she did not spend much time in the Wolf Lake job sitting down to do skilled-type work. Most of time, she was up waiting on customers and doing other things like sweeping floors. She waited on the public at the counter every day. (Tr. 70).

Plaintiff's husband is a pastor. She accompanied him on two church trips to Africa since 2008. (Tr. 53-55).

A vocational expert (VE) testified that plaintiff's past work as a postal clerk is classified as light and semi-skilled in the *Dictionary of Occupational Titles*, and was performed by her at the heavy exertional level. Her job as a postmaster is classified as sedentary and skilled, but was performed by her at the heavy exertional level. (Tr. 73). The ALJ did not ask the VE a hypothetical question. (Tr. 76).

4. **Medical Records**

Plaintiff was involved in a vehicular accident on August 18, 2008. She was treated in the emergency room and discharged to home. X-rays showed degenerative changes of the cervical spine, mild degenerative disc disease at L4-5, and mild degenerative disc disease in the mid-thoracic spine. There were no fractures. (Tr. 374-382). She had pain in her left shoulder following the accident. (Tr. 401).

In March, 2009, Dr. John Wood performed surgery to repair a torn left rotator cuff. (Tr. 387-388). Because of possible infection, the surgical site was reopened and debrided in April, 2009. Dr. Wood indicated this may have been related to her diabetes. (Tr. 383-384). In June, 2009, she was progressing well in physical therapy, but Dr. Wood cautioned that her shoulder "would not be 100% ever." (Tr. 409). In August, 2009, although her shoulder was not 100%, plaintiff was willing to try to go back to work. Dr. Wood authorized another 6 weeks of physical therapy. (Tr. 410). On October 23, 2009, Dr. Wood noted that she was lifting 31 pounds in therapy. She had "progressed nicely" and was doing well with regard to strength and range of motion. She was having some back problems and ulnar neuropathy, for which she was being treated by Dr. Migone. Dr. Wood released her to return to full work duties. (Tr. 411-412).

Dr. Migone was plaintiff's primary care physician. She saw plaintiff for complaints of neck, back and left shoulder pain in 2009 and 2010. Dr. Migone also managed her diabetes and high blood pressure. On November 16, 2009, Dr. Migone wrote that she could return to work on December 16, 2009, with no

restrictions. (Tr. 759-787). On November 25, 2009, Dr. Migone wrote that plaintiff could return to work on December 16, 2009, but she was restricted to no lifting over 30 pounds. (Tr. 753). The next day, plaintiff called the office and asked that the note be corrected so that she was limited to lifting only 20 pounds. (Tr. 752).

Dr. Brent Newell, a rehabilitation specialist, saw plaintiff for low back and shoulder pain in December, 2009. On exam, she could forward flex, extend, side bend and twist at the waist with no difficulty. She had tenderness to palpation in the lower thoracic and lumbar areas. (Tr. 713-714). An MRI of the thoracic spine showed mild bulging of T6-67 with mild encroachment on the ventral thecal sac and central left neural foramina. An MRI of the lumbar spine showed degenerative changes and a bulging disc at L4-5. (Tr. 715-716).

Dr. Newell saw her again in April, 2010. Ms. Barnett told the doctor that her back pain had flared up since he last saw her. She had been taking Celebrex, but it was no longer helping. She had tried Lyrica and Vicodin in the past, but had too many side effects. On exam, she had a limited range of motion secondary to pain. Straight leg raising and Patrick's test were negative. Dr. Newell indicated that she was "just deconditioned at this point" and he recommended physical therapy. He was optimistic that she could meet the 70 pound lifting ability that was required by her postmaster job. (Tr. 952-953). In June, 2010, Dr. Newell noted that rehab services had indicated that she could do light to sedentary work. She was getting ready to go on a mission trip to Africa, so he refilled her Ultram. (Tr. 950).

In June, 2010, Dr. Migone wrote that plaintiff was unable to lift over 30 pounds. (Tr. 986). In October, 2010, she wrote a letter stating that a functional capacity evaluation placed her in the light to medium physical demand level, and that she would be best suited for a light to sedentary position that would allow her to change positions frequently. (Tr. 972).

In December, 2010, a physician's assistant in Dr. Newell's office noted that she was doing well on Ultram. (Tr. 988).

Ms. Barnett saw Dr. Migone in July, 2011. She was still complaining of low back and left shoulder pain that was worse with moderate activity. On exam, the lumbar spine had SI tenderness. Straight leg raising was negative. She had tenderness and mildly reduced range of motion in the left shoulder. There was no swelling in the extremities. There was no sensory loss or motor weakness. She was getting ready to go on another mission trip to Africa. She was to continue her home exercises and take Tramadol as needed for back and shoulder pain. (Tr. 1076-1080).

The last office visit with Dr. Migone was on December 15, 2011. Plaintiff complained of persistent low back pain that had, at times, radiated into both calves, both thighs, the upper back and left arm. Her gait was normal. She had muscle spasms and mild tenderness with motion of the lumbar spine. Straight leg raising caused radiating pain on both sides. She was able to heel and toe walk. (Tr. 1124-1125).

**Analysis**

ALJ Scurry found that Ms. Barnett was not disabled because she could perform the functions of her past work as a postmaster as that job is usually performed in the national economy.

According to the *Dictionary of Occupational Titles*, the job of postmaster (DOT 188.167-066) involves the following:

> Coordinates activities of workers engaged in postal and related work in assigned post office: Organizes and supervises directly, or through subordinates, such activities as processing incoming and outgoing mail; issuing and cashing money orders; selling stamps, bonds and certificates; and collecting box rents to ensure efficient service to patrons. Resolves customer complaints and informs public of postal laws and regulations. Confers with suppliers to obtain bids for proposed purchases, requisitions supplies, and disburses funds as specified by law. Prepares and submits detailed and summary reports of post office activities to designated superior. Selects, trains, and evaluates performance of employees and prepares work schedules. May perform or participate in post office activities depending on size of post office. May plan and implement labor relations program. May confer with employees to negotiate labor disputes.

The DOT classifies the job of postmaster as sedentary. Sedentary work requires lifting no more than 10 pounds, occasionally carrying articles like docket files or small tools, sitting and occasional walking and standing. 20 C.F.R. §404.1567(a).

The job of postal clerk (DOT 243.367-014) is light, and has the following requirements:

> Performs any combination of following tasks in post office: Sells postage stamps, postal cards, and stamped envelopes. Issues money orders. Registers and insures mail and computes mailing costs of letters and parcels. Places mail into pigeonholes of mail rack, or into bags, according to state, address, name of person, organization, or other scheme. Examines mail for correct postage and cancels mail,

> using rubber stamp or canceling machine. Weighs parcels and letters on scale and computes mailing cost based on weight and destination. Records daily transactions. Receives complaints concerning mail delivery, mail theft, and lost mail, completes and routes appropriate forms for investigation. Answers questions pertaining to mail regulations or procedures. Posts circulars on bulletin board for public information; distributes public announcements; and assists public in complying with other federal agency requirements, such as registration of aliens. May drive motorcycle or light truck to deliver special delivery letters. May be employed in remote retail store contracted by post office to provide postal services and be designated Contract-Post-Office Clerk (retail trade).

The VE testified that Ms. Barnett's job as postmaster at Wolf Lake was performed by her at the heavy exertional level. Plaintiff contends that, in fact, her postmaster job was a composite job, and the ALJ erred in finding that she could perform her past job as it is usually performed.

In determining whether a claimant can perform the functional demands and job duties of her past job, the "*Dictionary of Occupational Titles* (DOT) descriptions can be relied upon -- for jobs that are listed in the DOT -- to define the job as it is *usually* performed in the national economy." SSR 82-61, 1982 WL 31387, *1 (emphasis in original). However, "composite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT. Such situations will be evaluated according to the particular facts of each individual case." *Ibid.*

As the Commissioner acknowledges, under the agency's own Program Operations Manual, a composite job may not be considered in determining whether the claimant can perform her past job as it is generally performed in the economy:

Page **12** of **17**

> Composite jobs have significant elements of two or more occupations and as such, have no counterpart in the DOT. If you can accurately describe the main duties of [past relevant work] only by considering multiple DOT occupations, the claimant may have performed a composite job. . . .When comparing the claimant's RFC to a composite job as it was performed, find the claimant capable of performing the composite job only if he or she can perform all parts of the job.  A composite job will not have a DOT counterpart, so do not evaluate it at the part of step 4 considering work "as generally performed in the national economy.

See, Doc. 27, p. 13, citing POMS DI 25005.020.

Plaintiff testified that the population of Wolf Lake, Illinois, was 300.  Her job as postmaster there required that she open up every morning, unload the mail truck, sort the mail, wait on customers, pick up packages, mop floors, wash windows and empty the trash.  She also did some work on a computer, such as timekeeping.  She had to do things at Wolf Lake that she did not have to do in her previous job as a mail clerk at the Du Quoin post office because there were other people working with her at Du Quoin, including a janitor, four or five other clerks, mail carriers, and a postmaster.  Plaintiff also testified that she did not spend much time in the Wolf Lake job sitting down to do skilled-type work.  Most of time, she was up waiting on customers and doing other things like sweeping floors. (Tr. 48-50, 70).

The Commissioner argues that plaintiff's job was not, in fact, a composite job.  Rather, plaintiff had two separate past jobs, as a postal clerk at Du Quoin and as a postmaster at Wolf Lake.  However, this argument ignores plaintiff's testimony about the requirements of her job at Wolf Lake.  It seems evident that the Wolf

Lake job, although designated as a postmaster position, required plaintiff to perform the functions of (at least) both postmaster and postal clerk.

The Commissioner points out that the VE characterized plaintiff's past job as "postmaster" and identified it as DOT 188.167-066.  The VE testified that the job was heavy as she performed it, but did not testify that it was a composite job.  The Commissioner now argues that plaintiff's failure to point out a conflict with the DOT at the hearing precludes her from relying on that conflict here.

The ALJ is required to identify and obtain an explanation for any conflicts between a VE's testimony and information in the DOT.  SSR 00-4p.  However, where plaintiff has failed to identify a conflict at the hearing, she cannot demonstrate error unless the conflict was "obvious enough that the ALJ should have picked up on [it] without any assistance."  *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009), citing *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008).

The Commissioner's argument fails for two reasons.  First, in the Court's view, the conflict between the VE's testimony and the DOT was obvious, at least to a person familiar with the DOT description of the postmaster job.  Secondly, plaintiff's counsel did raise a question as to whether the DOT description of postmaster accurately described plaintiff's job at Wolf Lake.

At the hearing, plaintiff's counsel questioned the VE as to whether the skill level of the job at Wolf Lake corresponded to the skill level of the DOT description. Counsel pointed out that the post office served a small town and plaintiff was required to do "a broad range of tasks."  The VE testified that these circumstances

"could have" an impact on whether she actually had the skills of the job as described in the DOT. Counsel then proposed to go over a job specialty report with plaintiff to identify particular aspects of the job which she was not required to do at Wolf Lake. The ALJ discouraged counsel from pursuing this line of questioning, saying, "Well, Counsel, I'll just let you know now that transferable skills is not the battleground in this case and I'll let you know that now." (Tr. 73-74).

Admittedly, counsel did not use the phrase "composite job" and did not address a conflict between the DOT description and the physical requirements of the postmaster job.[2] Still, she did raise the general issue that the VE was incorrect in testifying that the Wolf Lake job corresponded to the DOT description of postmaster. This, coupled with the obvious conflict between the job as described in the DOT and the duties required of plaintiff at Wolf Lake, was sufficient to alert the ALJ that the VE's testimony conflicted with the DOT.

The parties have not cited any Seventh Circuit cases on the composite job issue, and the Court's own research has not identified any such cases. Plaintiff cites several district court cases holding that the ALJ "may not deem a claimant capable of performing past relevant work by dividing the demands of a composite job into two separate jobs and finding her capable of performing the less demanding of the two jobs." *Garcia v. Colvin*, 2013 WL 3321509, *11 (N.D.Ill. 2013), citing *Peterson v. Astrue*, 2010 WL 3219293. *5 (N.D.Ind. 2010). The

---

[2] Plaintiff was represented by a different attorney at the administrative level.

Court finds the reasoning of these cases to be persuasive. Simply put, if the Wolf Lake job was a composite job, the ALJ erred in finding at step four that plaintiff could do the job of postmaster as it is usually performed.

The error at step four is case dispositive. Ms. Barnett was 52 years old on the date of the ALJ's decision and was 54 years old on her date last insured. If she is capable of doing a full range of sedentary work, but cannot do her past relevant work, the Grids dictate that she is disabled unless she has transferrable skills. 20 C.F.R. Part 404, Subpart P, Appendix 2, §200.00(g); Rules 201.12-201.16.[3] The VE did not testify about whether she had transferrable skills. So, if she is unable to do her past work, she may well be entitled to DIB.

In view of the disposition of plaintiff's first point, it is not necessary to consider her other arguments. However, the Court does wish to point out that, with regard to plaintiff's last point, the Appeals Council could eliminate the guesswork by simply stating in plain English whether or not it accepts additional exhibits submitted to it as "new and material evidence." In any event, those additional exhibits will be part of the record to be considered on remand; as those exhibits relate to plaintiff's credibility and her RFC, the ALJ will take a fresh look at those issues.

The Court wishes to stress that this Memorandum and Order should not be

---

[3] The Grids (20 C.F.R. Part 404, Subpart P, Appendix 2) are appropriate where the claimant has no nonexertional limitations and has the RFC to do a full range of work at a specified exertional level. 20 C.F.R. Part 404, Subpart P, Appendix 2, §200.00(e).   See also, *Haynes v. Barnhart*, 416 F.3d 621, 628-629 (7th Cir. 2005).

construed as an indication that the Court believes that Ms. Barnett is disabled or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Carol J. Barnett's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence <u>four</u> of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDRED.**

DATE:   December 30, 2014.


<u>s/ Clifford J. Proud</u>
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**